JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

(ADDITIONAL COUNSEL LISTED BELOW)

ATTORNEYS FOR PLAINTIFF AND
PROPOSED CLASS COUNSEL

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| IN RE C.R. ENGLAND, INC. DATA BREACH LITIGATION | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Lead Case No.: 2:22-cv-374-DAK-JCB |

Plaintiffs James Van Sickle, Bruce Bischoff, James Boss, and Albert Singletary, move the Court to preliminarily approve their settlement with Defendant C.R. England, Inc. ("C.R.E." or "Defendant"), as "fair, adequate, and reasonable."[1] The lawsuit arises out of the October 30, 2021, targeted cyber-attack C.R.E. experienced whereby cybercriminals may have accessed the personally identifiable information ("PII") belonging to approximately 224,572 individuals (the "Data Breach"). Plaintiffs allege they disclosed their PII to C.R.E. believing C.R.E. would protect their information using "reasonable" means. The PII collected included, in most instances, full

---

[1] C.R. England, Inc. does not oppose this motion and has agreed to and executed the Settlement Agreement, including the funding of a common fund. Consistent with the Settlement Agreement, Defendant does not admit liability, denies any statement in this motion suggesting otherwise, and does not take a position on how the common fund will be distributed to Settlement Class Members.

names, dates of birth, addresses, and Social Security numbers. In other words, Plaintiffs allege the breach disclosed all the data hackers purportedly needed to steal Plaintiffs' identities and compromise their accounts, exposing Plaintiffs and other members of the putative class to harms alleged in the complaint.

To address those alleged harms, Plaintiffs sued C.R.E. under nine counts, alleging the company violated its contended duty to protect their PII. Defendant contested Plaintiffs' claims from the start, denying liability and filing a Motion to Dismiss Plaintiffs Consolidated Amended Class Action Complaint. Although Plaintiffs believed their claims would survive all challenges, including through class certification and summary judgment, informal discovery and party negotiations revealed risks for both parties in litigating plaintiffs' claims. Recognizing those risks, the parties agreed to mediate the case with Bruce A. Friedman of JAMS, who brokered a framework for settling.

The Settlement negotiated on behalf of the Settlement Class establishes a $1,400,000 non-reversionary common fund, which will be used to pay for benefits to the Settlement Class, notice and administration costs, Plaintiffs' services awards, CAFA notices, and attorneys' fees and costs. If approved, the settlement will deliver three benefits to the class: (1) $50 pro rata cash payments; (2) payments for lost time and monetary losses spent addressing the Data Incident; and (3) C.R.E. has affirmed it improved its cybersecurity following the Data Breach, implementing systems meant to safeguard Class Members' PII.

As a result, the Court should preliminarily approve this settlement because it surpasses the standards for approval under Fed. R. Civ. P. 23. Indeed, the Court should presume the settlement is "approvable" because the parties negotiated it at "arm's length" after informal discovery. In approving the Settlement, the Court should appoint Plaintiffs as class representatives, Plaintiffs'

counsel as Class Counsel, order the parties to notify Class Members about the settlement, stay the case pending approval, and schedule a final approval hearing.

## FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

### A. The Data Breach

As alleged in the Amended Consolidated Complaint ("Am. Compl.") Defendant C.R.E. is a transportation service provider specializing as a refrigerated carrier, based in Salt Lake City, Utah. Am. Compl. ¶24. To run its business, C.R.E. collects PII from employees and others. *Id*. ¶¶ 25, 27, 110,1 22. That information includes students', employees', and consumers' "full names, dates of births, addresses, and Social Security numbers" *Id*. ¶ 46. In so doing, Plaintiffs argue C.R.E. promises to protect its students, employees, and consumers data, disclosing that it "recognizes the importance of protecting information and data [it] collects" and will "safeguard the information and data [potential employees] provide to [C.R.E.] from unauthorized access and unauthorized disclosure." *Id*. ¶ 29. Even so, Plaintiffs allege that C.R.E. never implemented the safeguards and systems needed to fulfill those promises. *Id*. ¶¶ 7,56,248. As a result, Plaintiffs allege that C.R.E.'s misconduct led to the Data Breach. *Id*. ¶¶ 4, 7.

On October 30, 2021, Defendant C.R.E. discovered the Data Incident. *Id*. ¶¶ 38,40. Following an internal investigation that concluded on April 20, 2022, C.R.E. – according to Plaintiffs' allegations – determined that the unauthorized actor had not only gained access to certain C.R.E.'s systems, but also viewed, and possibly took, shared, or misused data from within those systems. *Id*. ¶¶ 40, 44-45. Defendant failed to detect the hack before it happened, and Plaintiffs assert the Defendant did not stop the cyberthieves from accessing C.R.E.'s students', employees', and consumers' information. *Id.* ¶ 42. As a result, Plaintiffs believe the Data Incident exposed Plaintiffs' and the putative class's PII. *Id*. ¶¶ 3, 164.

**B.  Procedural History**

Upon receiving notice that his PII may have been impacted by the Data Breach, Plaintiff Van Sickle filed a class action lawsuit on June 3, 2022, in the District of Utah, Central Division, against C.R.E., alleging eight separate counts against Defendant: negligence, negligence *per se,* breach of implied contract, unjust enrichment, invasion of privacy, violation of the California Consumer Privacy Act, Violation of California's Unfair Competition law, and Declaratory Judgement and Injunctive Relief. Doc. 1. That case was captioned *Vansickle v. C.R. England*, Case No. 2:22-CV-374 and alleged that C.R.E. failed to adequately safeguard its students, employees, and consumers electronically stored private information in connection with the Data Breach. *Id*.

On June 8, 2022, Plaintiff Bruce Bischoff also sued C.R.E. to address the harm the Data Breach purportedly had caused him, in the District of Utah, Central Division, captioned, *Bischoff v. C.R. England*, Case No. 2:22-CV-388. One week later, on June 15, 2022, Plaintiff Timothy Duke sued C.R.E. as well in a case captioned, *Duke v. C.R. England*, Case No. 2:22-CV-399. Plaintiff Bischoff's and Duke's Complaints were based on the same or similar facts as Plaintiff Van Sickle's and alleged substantially similar counts against C.R.E.

Before filing these cases, Plaintiffs' counsel conducted an extensive pre-suit investigation to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by the Plaintiffs and the Class.  *See* Joint Declaration of Plaintiffs' Counsel Supporting Motion for Preliminary Approval of Class Action Settlement (Plaintiffs' Counsel's Joint Decl.) ¶ 5 (attached as **Exhibit 1**).

On July 29, 2022, Plaintiffs Van Sickle, Bischoff, and Boss filed an unopposed Motion to Consolidate their cases that was granted by the Court on August 9, 2022. Docs. 18, 20. Plaintiffs also moved to appoint interim co-lead class counsel, Doc. 21, which the Court granted. Doc. 22.

Plaintiffs filed an Amended Consolidated Complaint on September 8, 2022. Doc. 23. C.R.E. moved to dismiss Plaintiffs' Amended Consolidated Complaint on October 21, 2022. Doc. 26. That motion is fully briefed. *See* Docs. 26, 27, 31. A motion hearing was initially set by the Court for January April 6, 2023, before Judge Dale A. Kimball. *Id.*

Since the early stages of the case, the Parties discussed the possibility of early resolution and engaged in arms-length settlement negotiations. Having been unsuccessful in concluding those negotiations, the Partis agreed to participate in private mediation. Plaintiffs' Counsel's Joint Dec. ¶8. To allow the Parties to focus their efforts on that mediation, the Parties jointly requested that the motion to dismiss hearing be continued. Docs. 33, 34, 37, 38.

### C. Mediation

On August 3, 2023, the Parties participated in a mediation with Bruce A. Friedman of JAMS, a seasoned attorney and mediator experienced in resolving data breach class action cases. Plaintiffs' Counsel's Joint Dec. ¶ 9. Under his guidance, the Parties negotiated at "arm's length," communicating their positions through him and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.* ¶ 10. From the start, the Parties agreed they would not negotiate Proposed Class Counsel's attorney fees or Plaintiffs' service award until the parties agreed on the settlement agreement's core terms, thus avoiding conflict between Plaintiffs and the Settlement Class. *Id.*

Before mediation, the Parties exchanged information about the size of the putative class, the types of PII potentially compromised in the breach, and C.R.E.'s investigation of, and response to, the Data Breach. *Id.* ¶ 11. Armed with this information, Plaintiffs understood the landscape affecting their claims and Defendant's defenses, including the risks and expenses at play in litigating the case. *Id.*

The mediation session with Mr. Friedman was productive but did not immediately result in a settlement in principle. *Id*. ¶ 12. A settlement in principle was reached only after Mr. Friedman submitted his mediator's proposal for a common fund settlement, which was ultimately accepted by the Parties. *Id*. Throughout all negotiations, Settlement Class Counsel and counsel for C.R.E. fought hard for the interests of their respective clients. *Id*.

In the weeks that followed, the Parties continued negotiations and drafted the particular terms of the Settlement Agreement and associated exhibits. *Id*. ¶ 14. The Settlement Agreement and various exhibits ("SA") was finalized and signed on September 11, 2023. *Id*.

## SETTLEMENT AGREEMENT

The Settlement Agreement specifies how to implement the Parties' Settlement from start to finish, including how to define the Settlement Class, the benefits they will receive, how to handle claims, and how Plaintiffs may petition for fees and service awards. A copy of the Settlement Agreement is attached as **Exhibit 2**.

### A. Class Definition

The Settlement Agreement defines the Settlement Class as "All persons who were sent notice of the Data Breach." SA ¶ 49.

### B. Settlement Benefits

The Settlement secures three significant benefits for the class, remediating and mitigating the harms Plaintiffs contend the Data Incident has caused and will continue to cause.

First, the Settlement offers each Settlement Class Member a chance to claim a pro rata cash payment of $50. *Id.* ¶ 54(b). The amount of this payment may be reduced or increased on a pro rata basis depending upon the number of claims filed. *Id*.

Second, for monetary losses and lost time, Settlement Class Members may claim up to $5,000 for losses resulting from the breach, including but not limited to identity theft, fraud, and costs spent mitigating those risks. *Id.* ¶¶ 54(c); 54(d)(i). Payments for lost time and monetary losses are in addition to Settlement Class Members' ability to collect a $50 pro rata cash payment. To support their claim, Settlement Class Members just have to submit the appropriate documentation supporting their claim. *Id.* This ensures that Settlement Class members who have already spent money as a result of the Data Breach, including in response to identity theft, can have those losses reimbursed. Additionally, Settlement Class Members may also claim "lost time" dealing with the breach at $25.00/hour for up to 4 hours. *Id.* ¶ 54(c). Claims of lost time only require an attestation that the Class Member spent the claimed time responding to issues raised by the Data Breach. *Id.*

And third, C.R.E has confirmed it has enhanced its cybersecurity since the Data Breach. *Id.* ¶ 58, affirming that commitment in the Agreement. Altogether, these improvements will safeguard the PII Defendant still possesses, including data belonging to Settlement Class members.

## C.  Claims, Objections, Opt-Outs, and Termination

Following the terms of the Settlement Agreement, and  subject to Court approval, Angeion Group ("Angeion") has been selected to serve as the Claims Administrator. *Id.* ¶ 42.  A declaration setting forth Angeion's qualifications is attached as **Exhibit 3**. The Claims Administrator will process all claims, including by reviewing any documents a claimant attaches to support their claim. *Id.* ¶ 54(a). To claim benefits, Settlement Class Members only need to "provide [their] full name home mailing address, email address, phone number, affirmation that [they are] a member of the settlement Class; and a signature." *Id.* ¶ 57(b). Claim forms may be submitted to the Settlement Administrator either electronically via the Settlement Website, via electronic mail, or via U.S. Mail. *Id.* ¶ 57(e). The Claims Administrator will review claims for completeness and

plausibility. *Id*. ¶ 54(a). If rejected, Class Members will have the opportunity to seek review by the Parties' counsel if they dispute the Claims Administrator's initial determination. *Id*. The Claims Administrator may also request documents to support the claim, including documents evidencing any efforts by the claimant to mitigate their losses. *Id*. ¶ 57(h). If approved, Class Members will receive payments by check after the claims finalization date. *Id*. ¶ 57(m).

Settlement Class members may also object to the Settlement by notifying the Claims Administrator within 60 days from the day the administrator notifies the Settlement Class about settlement. *Id.* ¶ 72. To object, an objector is to state their contact information, identify the case name and number, state why they are objecting and if an attorney is representing them, file all documents the objector wants the Court to consider, identify any other objections they have filed in the last four years, and sign the objection. *Id.* ¶ 73(b). The objector need not attend the approval hearing for the Court to consider their objection, though they must appear in the case and state their intention to appear at the final approval hearing in the written objection, if they intend to attend the hearing, and list any exhibits they will introduce or witnesses they will call. *Id*. Notice of a Settlement Class member's intent to object and submission of the completed objections to the Clerk of the Court must be filed simultaneously. *Id*. ¶ 73(a). A copy of the completed objections must also be submitted via postal mail or email to the Settlement Administrator. *Id*.

And last, Settlement Class members may opt-out from receiving the Settlement's benefits by notifying the Claims Administrator in a signed writing providing their contact information, identifying the case name and number, and a statement that they wish to be excluded. *Id*. ¶ 71(b). Those who opt out will not benefit from the Agreement and will preserve any claims they have against Defendant about the Data Breach. *Id*. ¶¶ 70(b); 71(c). Class members opting out must

notify the administrator within 60 days from the day the administrator notifies the class about settlement. *Id.* ¶¶ 70(a); 72(a).

The Parties have conditioned their settlement on this Court's approval, meaning either Party may elect to terminate the Settlement Agreement if the Court rejects or modifies its terms, or denies "final" approval. *Id.* § XIV. If more than two percent of Class Members opt out, Defendant may terminate the agreement within 21 days after the Objection and Exclusion Deadline. *Id.* ¶ 71(g). However, the Agreement clarifies that if it terminates, C.R.E. "shall [still] be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel or service awards." *Id.*

### D. Release

To receive the settlement's benefits, Plaintiffs agree to release C.R.E. from their class action claims relating to the Data Breach and Defendant's data security practices. *Id.* ¶ 60-61. The release will take effect upon the "Effective Date" after the Court (if it so chooses) enters a "Final Order and Judgment" approving the Settlement. *Id.* §§ IV, VII.

### E. Attorneys' Fees, Expenses and Service Awards

As detailed in the Settlement Agreement, the parties did not discuss or negotiate the fee or service award until they agreed on the terms benefiting the class. Plaintiffs' Counsel's Joint Dec. ¶ 10. As a result, the parties avoided conflict with the Settlement Class's interests, thus fulfilling their responsibilities to the Settlement Class first.

If the Court preliminarily approves the settlement, Plaintiffs may petition the Court within 14 days of the objection deadline to approve their attorney's fees and expenses and Plaintiffs' service award to be paid from the Settlement Fund. SA ¶ 81. Class Counsel may seek up to one-third of the Settlement Fund, or $466,666.67. *Id.* Additionally, Class Counsel may seek

reimbursement of expenses up to $20,000. *Id.* ¶ 82. As a service award, Plaintiffs will request $5,000 per Class Representative ($20,000 total), an amount intended to recognize Plaintiffs' efforts in the litigation and commitment to the Settlement Class. *Id.* ¶ 84.

### F. Class Notice

To notify the Settlement Class, the Class Administrator will disseminate by U.S. Mail the Notice to Settlement Class Members identified on the Class List. *Id.* ¶¶ 67, 69. Then, the Claims Administrator will create a website where it will post all documents relating to this case and the settlement, including the claims form needed to submit a claim online. *Id.* ¶ 44; Exs. A-C. Under the Agreement, the website must allow class members to file claims "electronically" if they so choose. *Id.* ¶¶ 17, 44, 57(d-e). The notice will contain all necessary information regarding the settlement.

## ARGUMENT

Rule 23(e) provides that a proposed settlement may be approved only after a "finding that it is fair, reasonable, and adequate." Approval of a proposed settlement is "committed to the sound discretion" of the court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (citation omitted). However, "[i]n exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added). As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *see also Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), aff'd, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable").

The Tenth Circuit has identified four factors (the "*Jones* Factors") for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e):

"(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324. These factors are in addition to the factors listed under Rule 23(e)(2).[2]

### A. The Court Should Preliminarily Approve the Settlement

This Settlement satisfies the factors contained in Rule 23(e)(2) and the *Jones* factors as demonstrated below. Thus, Plaintiffs and their counsel respectfully request the Court preliminarily approve the Settlement so that notice can be disseminated to Class Members.

   i.   *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length

Courts examine "[t]he fairness of the negotiating process" "'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008). This Settlement is the product of months of litigation and legitimate, arm's-length negotiations. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[When] the parties have bargained at arms' length, there is a presumption in favor

---

[2] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

of the settlement"). There is no doubt that the Settlement was fairly and honestly negotiated. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) (no indication of collusion weighed in favor of approval).

The proposed settlement was the result of hard-fought, arms-length negotiations between highly experienced counsel, with the assistance of an experienced data breach mediator, Bruce A. Friedman of JAMS. *See* Plaintiffs' Counsel's Joint Decl. ¶¶ I-II. After first spending months negotiating directly without success, Counsel engaged in a mediation, eventually agreeing to a Settlement in principle after Mr. Friedman submitted a mediator's proposal, and then worked to finalize the terms of the Settlement. *Id*. ¶ 8-13. Because the Settlement "resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable" for purposes of preliminary approval. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Further, in negotiating the Settlement and litigating the case, Plaintiffs had the benefit of attorneys who are highly experienced in complex class action litigation, especially data breaches. *See* Plaintiffs' Counsel's Joint Decl., ¶¶ 15, A-D. As evidenced by Class Counsel's extensive experience in data breach class actions, Class Counsel are competent, well-respected, and more than capable of prosecuting this case from inception to completion. *See Id*. Throughout all negotiations, Class Counsel fought hard for the interests of the Settlement Class and Plaintiffs. *Id*. at ¶ 16.

Similarly, Plaintiffs were also committed to acting in the best interests of the Settlement Class. Plaintiffs assisted in the investigation of this case, reviewed and approved pleadings, stayed

in contact with Settlement Class Counsel, and answered Settlement Class Counsel's many questions. *Id*. at ¶ 6. Plaintiffs made all necessary decisions required in support of the best interests of the Settlement Class. Accordingly, Rule 23(e)(B), Rule 23(e)(A), and the first *Jones* factor are met.

        ii.    <u>*Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation</u>

Serious questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Plaintiffs believe the claims asserted in the Amended Consolidated Complaint are meritorious, however, Plaintiffs also acknowledge that continuing litigation poses significant risks and additional costs. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles – even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting Data Incident cases dismissed at the Rule 12(b)(6) or Rule 56 stage). In fact, should litigation continue, Plaintiffs will be immediately tasked with surviving a Motion to Dismiss. Class certification is another hurdle that would have to be met – and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

In sum, success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Because of this, the Parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable

alternative to continued litigation. *Lucas*, 234 F.R.D. at 693–94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1138 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . .").

Thus, the second *Jones* factor militates in favor of approval.

    iii.    *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation

Most importantly, the Settlement guarantees Class Members immediate relief from harm as well as protection from future harm, which outweighs the mere possibility of future relief through lengthy and expensive litigation. Class Members can easily submit a claim for their share of the cash payment as well as compensation for monetary losses and lost time, as described above. SA ¶¶ 16, 54. This recovery is objectively substantial.

If litigation were to continue it would involve considerable time and expense. For example, Defendant's Motion to Dismiss, class certification, *Daubert* motions, and motions for summary judgment would all be hotly disputed, and Defendant would likely appeal any adverse verdict. Plaintiffs face continued risk if they reach for the prospect of greater relief through further litigation. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted). By reaching a favorable settlement prior to trial, Plaintiffs ensure a risk-free recovery for the Class.

Accordingly, Rule 23(e)(2)(C)(i) is satisfied, as is the third *Jones* factor.

    iv.    *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable

The Settlement is supported by Plaintiffs, Defendant, and their respective counsel, who are each highly familiar with the strengths and weaknesses of this litigation. Class Members will have

the opportunity to weigh in on the Settlement at the Fairness Hearing if the Court grants preliminary approval.

Class Counsel has carefully evaluated the Settlement, and believe it provides substantial value to Plaintiffs and the Class. As a result of the Settlement, these benefits will be made immediately available to the Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Class would secure a better outcome were the case prosecuted through trial. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight" and supports approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *accord Lucas*, 234 F.R.D. at 695; *Rhodes*, 308 F.R.D. at 667.

Moreover, the proposed amount of attorneys' fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees of up to one-third of the Settlement Fund and reasonable litigation costs up to $20,0000, as well as service awards for Plaintiffs in the amount of $5,000 per Class Representative. SA ¶¶ 81-82; 84. This request also does not take into consideration the value of the data security measures to be implemented by Defendant. This request is well within the range of approvable. *See Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc*., 2010 WL 5387559, at *3 (D. Colo. Dec. 22, 2010) (finding "approximately one third of the total economic benefit bestowed on the class" to be "the customary fee awarded to class counsel"); *see also Lucas v. Kmart Corp.*, Civil Action No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420, at *6 (D. Colo. July 27, 2006) (same). While Plaintiffs will fully brief their fee request by separate motion prior to Settlement Class Members' deadline to object to or exclude themselves from the Settlement, the attorneys' fees, costs, and service awards sought clearly do not present a barrier to preliminary approval.

Accordingly, the final *Jones* factor and Rule 23(e)(2)(C)(iii) are met.

     v.    <u>Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement</u>

Rule 23(e)(2)(D) requires the Court to confirm the class action settlement treats all class members equitably.

The proposed Settlement is a common fund settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries they assert have been caused by the Data Breach. *See* SA ¶ 54. In satisfaction of Rule 23(e)(2)(D), the reimbursement for cash compensation, monetary losses, and lost time allows Settlement Class Members to obtain relief based upon the specific types of damages they represent they have incurred and treats every claimant in those categories equally relative to each other. *Id.*

Class Counsel also intend to apply for Service Awards for Plaintiffs. SA ¶ 41. Courts have held that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class litigation. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). A service award of $5,000 to the named Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment.

As evidenced by the foregoing, the allocation plan is effective and is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld v. Lenich*, No. 18-CV-6720-NGGPK, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021). Thus, this factor supports preliminary approval of the Settlement.

     vi.    <u>Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief</u>

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims." The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of an experienced mediator. As set forth above, all claims will be processed by the Claims Administrator, with the participation of Class Counsel. *See* SA ¶ 54(a). To the extent any Settlement Class Member disputes a claim determination made by the Claims Administrator, Class Members will have the opportunity to seek review by the Parties' Counsel. *Id*.

The proposed settlement is effective for distributing relief and merits preliminary approval.

vii.    Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified

Lastly, other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23(e)(3). As such, this factor supports preliminary approval.

**B. The Court Should Certify the Class for Settlement Purposes**

Under Rule 23(a), the Court can certify a class when it is so "numerous that joinder is impracticable," the class shares questions of law or fact, the representatives' claims are "typical," and the representative will "fairly and adequately protect" the class's interests. See Fed. R. Civ. P. 23(a). And a plaintiff may maintain a class when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

i.    The Class satisfies "numerosity"

The class satisfies Rule 23(a)(1) because it is "so numerous that joinder of all members is impractical." The Tenth Circuit has held that "Class actions have been deemed viable in instances

where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978); *see also Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (finding class with 358 members sufficiently numerous). Here, the class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class consists of approximately 224,000 individuals. SA ¶ 51. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

  ii. <u>The Class satisfies "commonality"</u>

  Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). In fact, "even a single common question will do." *Id*. at 359 (internal quotations omitted).

  Courts have previously addressed this requirement in the context of data breach class actions and found it readily satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 220 WL 256132 *11, *citing In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. Aug. 15, 2018) (noting that the data breach complaint contains a common contention capable of class-wide resolution—one type of injury claimed to have been inflicted by one actor in violation of one legal norm).

Here also, the commonality requirement is readily satisfied, as the Plaintiffs and Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Breach discovered by C.R.E. around October 30, 2021. Specifically, Plaintiffs have alleged that the following questions of law and fact are common to the class:

a.  Whether C.R.E. unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

b.  Whether C.R.E. failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether C.R.E. data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  Whether C.R.E. data security systems prior to and during the Data Breach were consistent with industry standards;

e.  Whether C.R.E. owed a duty to Class Members to safeguard their PII;

f.  Whether C.R.E. breached its duty to Class Members to safeguard their PII;

g.  Whether computer hackers obtained Class Members' PII in the Data Breach;

h.  Whether C.R.E. knew or should have known that its data security systems and monitoring processes were deficient;

i.  Whether Plaintiffs and Class Members suffered legally cognizable damages as a result C.R.E.'s misconduct;

j.  Whether C.R.E.'s conduct was negligent;

k.  Whether C.R.E.'s conduct was per se negligent, and;

l. Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief

Like in other data breach cases, these common issues all center on C.R.E.'s conduct, or other facts and law applicable to all class members, thus satisfying the commonality requirement. *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution.")

### iii. Plaintiff and Counsel Are "Adequate"

Rule 23(a) also requires that "the representative part[y] will fairly and adequately protect the interests of the class." In other words, rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *see also Amchem Prods. Inc.*, 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied. Settlement Class Representatives do not have any interests antagonistic to other class members and have retained, as previously stated, counsel who are abundantly qualified and experienced, satisfying the adequacy requirement.

### iv. Classwide Issues "Predominate"

Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance

inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624.

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by C.R.E. *See, e.g., Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc.*, 2016 WL 6902351 at *2 (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

> v.    Classwide Resolution is "Superior"

Finally, the superiority requirement is easily satisfied here where there are a large number of class members with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). The Settlement Agreement and notice plan provide Settlement Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to ensure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves.

Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case …would present intractable management problems…"). Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating 224,000 individual's data breach cases arising out of the same Data Breach. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C. The Notice Plan Complies with Rule 23 and Due Process

The Court should approve the notice plan because it directs "notice in a reasonable manner" under Rule 23. If the court determines that it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id.* "The notice may be by one or more of the following: United States mail, electronic means, or other

appropriate means." *Id*.; *see also Amchem*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

The Notice provided for by the Settlement Agreement is designed to be the best practicable under the circumstances. *See* SA, Exs. A-C. As stated above, the Notice plan provides for direct and individual notice to be provided to all Settlement Class Members via mail and/or email. In addition to the individual direct notice provided, the Claims Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement and other relevant court documents.

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* SA, Exs. A-C.

### D.  The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this

determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). As evidenced by the Declaration of Counsel, the proposed Settlement Class Counsel meets these requirements. The Court should thus appoint Terence Coates of Markovits, Stock & DeMarco LLC, Gary Klinger from Milberg Coleman Bryson Phillips Grossman, PLLC, Raina C. Borrelli of Turke & Strauss LLP, and Jason Hull of Marshall Olson & Hull, PC., as Settlement Class Counsel under Rule 23(g).

### E. The Court Should Appoint Plaintiffs as Class Representatives.

Plaintiffs should be provisionally appointed Class Representative. As set forth above, they have represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the class. Their PII, like the PII of the Settlement Class Members, has been impacted in the same Data Breach, and, as a result, Plaintiffs have the same interests as the Settlement Class Members. Plaintiffs' Counsel's Joint Decl. ¶ 13. Moreover, Plaintiffs have sufficiently represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*. Finally, Plaintiffs are informed of the risks of continued litigation and the benefits of early resolution.

### CONCLUSION

For all these reasons, the Court should: (i) preliminary approve the proposed settlement; (i) approve the proposed form of notice; and (iii) schedule a fairness hearing to rule on final approval of the proposed settlement.

Dated this 12th Day of September, 2023.

**MARSHALL OLSON & HULL, P.C.**

By:    <u>Jason R. Hull</u>
       Jason R. Hull
       Trevor C. Lang

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com

**MILBERG    COLEMAN    BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel:  866-247-0047
gklinger@milberg.com

**TURKE & STRAUSS LLP**
Samuel J. Strauss
Raina C. Borrelli
Alex Phillips
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
sam@turkestrauss.com
raina@turkestrauss.com
alexp@turkestrauss.com

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon
2754 Erie Ave. Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Counsel for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing **PLAINTIFFS' UNOPPOSED MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT** was filed this 12th day of September, 2023, via the Court's electronic system, which served all counsel of record.


/s/ Jason R. Hull