JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

(ADDITIONAL COUNSEL LISTED BELOW)

ATTORNEYS FOR PLAINTIFF AND
PROPOSED CLASS COUNSEL

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| **IN RE: C.R. ENGLAND, INC. DATA BREACH LITIGATION** | **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Lead Case No. 2:22-cv-374-DAK-JCB<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Judge Cecilia M. Romero** |

Pursuant to Fed. R. Civ. P. 23(e), and this Court's Preliminary Approval Order (Doc. 46), Plaintiffs James Van Sickle, Bruce Bischoff, James Boss, and Albert Singletary ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, respectfully move this Court for Final Approval of the Class Action Settlement. The $1,400,000,00 non-reversionary Settlement Fund is a substantial recovery for the roughly 219,208 Class Members and is fair, reasonable, and adequate by all measures.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Terence R.

1

Coates in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Coates Final Approval Decl.") attached as **Exhibit 1**; the Declaration of Shannon Swodzinski of Angeion Group, LLC ("Angeion") in Connection With Final Approval of Settlement ("Angeion Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted; all records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court at or before the March 6, 2024 Final Approval Hearing. A Proposed Order Granting Final Approval of the Class Action Settlement is filed herewith.

I.  **INTRODUCTION**

On June 3, 2022, the first of several class action lawsuits was filed against Defendant C.R. England, Inc. ("CRE" or "Defendant"), alleging that Defendant failed to protect current and former students' and employees' sensitive information from a ransomware attack ("Action"). The actions were consolidated on August 9, 2022, and Plaintiffs filed a Consolidated Amended Class Action Complaint. ("CAC", Doc. 23). After fully briefing a Motion to Dismiss and recognizing the risks and costs of ongoing litigation, Plaintiffs and Defendant agreed it was prudent to mediate this matter before Bruce A. Friedman of JAMS, a highly respected third-party mediator. Coates Final Approval Decl., ¶¶ 1-2; Settlement Agreement, p. 4 (Doc. 45-2, PageID 461). After a full-day mediation and further negotiations, the Parties agreed to a Settlement that, if approved by this Court, will fully resolve Plaintiffs' and the Class's claims.

II.  **FACTUAL BACKGROUND**

A.  **Factual Allegations**

This is a nationwide class action brought by Plaintiffs on behalf of themselves and a nationwide class of "All persons sent notice of the Data Breach." Settlement Agreement, ¶ 49. The case arises from the alleged compromise of personal identifying information ("PII"), including,

without limitation, "full names, addresses, dates of birth, and Social Security numbers" ("Private Information") as a result of a 2021 cyberattack CRE experienced ("Data Incident"). CAC, Doc. 23, at ¶¶ 2, 10, 38-47. Plaintiffs and Class Members include clients, consumers, students, and employees of CRE who had provided Private Information to CRE, and whose Private Information was compromised in the Data Incident. *Id.* at ¶¶ 27, 160. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to each impacted individual providing a description of the type of sensitive information involved and explaining that the data was exfiltrated from CRE's systems. *Id.* at ¶¶ 48, 111, 123, 134, 148. Plaintiffs allege that the cybercriminals acquired Plaintiffs' and Class Members' Private Information. *Id* at ¶¶ 44-45, 51.

### B. The Litigation

On June 3, 2022, Plaintiff Van Sickle filed the first complaint against Defendant in this Court for claims relating to the Data Incident. Doc. 1. Subsequent related complaints were filed, and on August 9, 2022, the Court entered an order consolidating the related actions. Doc. 20. On September 8, 2022, Plaintiffs filed their CAC. Doc. 23. In their CAC, Plaintiffs, individually and on behalf of the Class, asserted claims for (1) negligence; (2) breach of the implied covenant of good faith and fair dealing within the contract; (3) unjust enrichment; (4) negligence *per se*; (5) invasion of privacy; (6) unjust enrichment; (7) violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150; (8) violation of California's Unfair Competition Law, Cal. Bus. Code § 17200, et seq.; and (9) declaratory judgment and injunctive relief. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief in equity or by law. CAC, PageID 225-229.

On October 21, 2022, CRE moved to dismiss Plaintiffs' claims in their entirety. Doc. 26. Those motions were fully briefed by the Parties. While a hearing was pending on the Motion to

Dismiss, the parties agreed to stay the hearing to negotiate a resolution. Docs. 33, 34, 38. On August 10, 2023, the parties entered a stipulation to stay a decision on the Motion to Dismiss after reaching a settlement with the assistance of the mediator. Doc. 41. On that same date, the Court granted the stay. Doc. 42.

### C. Negotiations and Settlement

The Settlement is the result of months of arms-length negotiation and hard bargaining. Before entering into this Settlement Agreement, Defendant produced informal discovery that addressed the manner and mechanism of the Data Incident, the number of impacted individuals and composition of the Class, information about the initial breach notice program, the ransom response, security enhancements following the Data Incident, and available insurance coverage. Settlement Agreement ¶ 67. On August 3, 2023, the Parties engaged in a full-day mediation session with Bruce A. Friedman of JAMS – a mediator with substantial experience handling data breach class action mediations, which resulted in the settlement agreement that is the subject of this Motion. Coates Final Approval Decl., ¶ 1.

The Settlement resolves all claims related to the Data Incident on behalf of the Class. *See generally*, Settlement Agreement Doc. 45-2. The Class's substantial recovery in this case is a $1,400,000 non-reversionary Settlement Fund designed to cover all settlement costs (notice, fees, administration) and provide three separate forms of cash benefits Class Members: (1) $50.00 *pro rata* settlement payments of the remaining Settlement Fund (after the payment of any documented monetary losses and lost time as described herein, and after payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration) to each Class Member who submits a claim; (2) reimbursement for documented out-of-pocket losses and lost time up to $5,000.00 per claimant, including without limitation,

unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) reimbursement for loss of time compensated at $25.00 per hour for up to four (4) hours ($100.00 cap) only requiring an attestation that the Class Member spend the claimed time responding to issues raised by the Data Breach. Settlement Agreement, Doc. 45-2, ¶¶ 43, 54, PageID 466, 468. Any remaining funds, including for settlements checks that are not cashed by the deadline to do so, shall be distributed to a charitable organization approved of by the Parties and subject to Court approval. *Id.*, ¶ 40 PageID 465.

### D. Proposed Class

The proposed Class is defined as: All persons sent notice of the Data Breach.[1] *See id.* at ¶ 49. It was estimated that the Class is comprised of approximately 224,000 individuals nationwide. *Id.*, ¶ 51. However, in the process of providing notice, Defendant only provided 219,208 records containing Class Member' names, and only 204,663 of those contained last known mailing addresses. Angeion Decl. ¶ 5.

### E. Release

Plaintiffs and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this litigation. *Id.*, ¶ 71.

---

[1] "Data Breach" or "Data Incident" means the cybersecurity incident involving Defendant and occurring on or around October 2021.

### F. Preliminary Approval and the Fairness Process

On September 12, 2023, Plaintiffs moved the Court to grant preliminary approval of the proposed Settlement, to approve the proposed notice plan as the best notice practicable under the circumstances, and to schedule a Final Approval Hearing. *See* Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action, Doc. 45. On September 13, 2023, the Court entered an order preliminarily approving the Settlement and conditionally certifying a Class. *See* Preliminary Approval Order, Doc. 46. In doing so, the Court found that the Settlement Agreement was "fair, reasonable and adequate" and the Notices "meet[] the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice." *Id.* at ¶¶ 1, 10, PageID # 664, 666.

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. Under that plan, Angeion Group ("Angeion") mailed a written notice to each of the 204,663 Class Members for whom valid mailing addresses were known. Angeion Decl., ¶ 8. For those Postcard Notices that were returned without forwarding addresses, Angeion attempted to locate a current mailing address and remailed 27,413 notices to updated addresses. *Id.* at ¶ 10.

In addition, Angeion set up the Settlement Website containing, among other things, copies of the Long Form Notice, Claim Form, Settlement Agreement, the Court's Preliminary Approval Order, and other settlement documents. *Id.* at ¶ 11. The Settlement Website also included a case timeline, which specified important dates and deadlines for the Settlement, including the deadlines for Class Members to submit claims, file objections and submit requests for exclusion and the date and time of the Final Approval Hearing. There were 3,369 unique visitors to the Settlement Website, resulting in approximately 9,465 page views. *Id*. at ¶ 12. Angeion also established a toll-

free hotline, which received 153 calls between the Settlement Administrator and Class Members, totaling 728 minutes. *Id*. at ¶ 14. Class Members were given the opportunity to submit a claim online at the Settlement Website, or if they preferred, to submit a physical claim form for filing via mail.

As of February 6, 2024, of the 204,663 Class Members who were sent direct notice of the proposed settlement with only 5 requesting to be excluded. Coates Final Approval Decl., ¶ 4; *see also* Angeion Decl., ¶¶ 16-17. There are no objections to the Settlement. Coates Final Approval Decl., ¶ 4. One Class Member, Mr. Bohler, readily admits he "does not object to the fairness, reasonableness, or adequacy of the Settlement Agreement" and instead merely submit an untimely and meritless request for an apportionment of attorneys' fees, expenses and class representative service awards under the guise of an objection. Doc. 51. Furthermore, this case includes a 3.6% claims rate (7,400 claims filed out of 204,663 Class Members receiving direct notice) which is a reasonable claims rate for a data breach class action settlement and indicates that the Class strongly favors the Settlement. Coates Final Approval Decl., ¶ 4; *see also* Angeion Decl. ¶ 15. The number of total claims including the value of Settlement relief requested will be finalized at the end of this week and will be updated before the Final Approval Hearing.

Pursuant to the Preliminary Approval process, Plaintiffs submitted their Motion and Application for Attorneys' Fees, Expenses and Service Awards to Class Representatives on November 28, 2023 ("Plaintiffs' Fee Motion"). Doc. 47. Through that Motion, Plaintiffs seek $466,200 in fees (one third of the Settlement Fund), costs of $11,540.93, and services awards of $5,000 to each Class Representative. *Id.* On December 12, 2023, Class Member Elliot Bohler opposed Plaintiffs' Fee Motion. Doc. 51. In his opposition, Bohler seeks to be awarded $119,933.84 of the $466,200 in fees, an additional $3,977.54 in costs, and an award of $4,000 to

7

each Class Representative, instead of the proposed $5,000. *Id.* Plaintiffs and Class Counsel asked that the Court deny Class Member Bohler's fee request. Doc. 52.

## III. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. Doc. 46. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Doc. 45, this Court should certify the class for purposes of final approval of the settlement.

Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). The Court must determine whether the settlement is "fair, reasonable, and adequate." *Gradie v. C.R. England, Inc.*, No. 2:16-CV-00768-DN, 2020 WL 6827783, at *9 (D. Utah Nov. 20, 2020) (quoting Rule 23(e)(2)). To reach that conclusion, the court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

8

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*. 23(e)(2)(C)(i)-(iv).

In the Tenth Circuit, approval of a class action must also satisfy the factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (the "*Jones* Factors"). The factors that must be addressed under Jones to evaluate whether a class action settlement is fair and reasonable under Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable." *Id*.

IV.     ARGUMENT

Here, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors and should be finally approved.

**A. Whether the Settlement Was Fairly and Honestly Negotiated.**

The negotiations in this matter occurred at arm's length. *See* Coates Final Approval Decl., ¶ 1. "District courts within the Tenth Circuit have found settlements to be fairly and honestly negotiated where parties have vigorously advocated their positions and where a settlement was reached through arms-length negotiations." *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 219CV00174RJSCMR, 2021 WL 3809083, at *4 (D. Utah Aug. 26, 2021). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). The use of an experienced neutral mediator here (Bruce A. Friedman of JAMS) also weighs in favor of a finding of non-collusiveness. *See In*

9

*re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1091 (10th Cir. 2021).

Before entering into settlement discussions on behalf of class members, counsel should have sufficient information to make an informed decision. Such is the case here. By the time the Settlement in principle was reached, Plaintiffs and Plaintiffs' Counsel were well informed of the strengths and weaknesses of the Action. *See* Coates Final Approval Decl. ¶ 11. Indeed, the Settlement was achieved only after: a thorough pre-complaint investigation that culminated in the preparation of detailed complaints; the consideration of relevant informal discovery; the preparation of a detailed mediation statement that addressed the strengths and weaknesses of the Parties' claims and defenses both on the merits and as to class certification; numerous discussions with Plaintiffs concerning possible settlement terms and potential improvements to offers made by Defendant; and intense settlement negotiations that included an exchange of information between the Parties about the Data Incident, potential damages, and the input of Plaintiffs. *Id*.

### B. Whether There Are Serious Questions of Law and Fact Placing the Outcome of Litigation in Doubt

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that CRE's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiffs plead in their Consolidated Amended Complaint.

While Plaintiffs believe they have strong claims, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where the chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-

CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). This case involves a proposed class of roughly 240,000 individuals (each of whom may need to establish cognizable harm and causation) and a complicated and technical factual background. Defendant has already asserted and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases always run the risk of standing being an issue or having class-wide certification issues. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("*In re OPM*") ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation. In contrast, this Settlement offers immediate relief to over 200,000 Class Members without the need for lengthy litigation.

Maintaining class action status through trial is another significant risk. Only a few data breach cases have actually gone to contested class certification. *See, e.g. Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). Even where class certification is granted, maintaining certification is not assured, as evidenced by the Marriott data privacy litigation where classes were certified, decertified, and certified again. *See In re Marriott Int'l Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022); *In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023); *In re Marriott Int'l Customer*

*Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023). And even though class certification was recently affirmed in part by the Eleventh Circuit in the high-profile *In re Brinker* case, the court remanded the case to clarify the predominance finding. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023). Here, Defendant will likely oppose certification if the case proceeds. Class certification through trial is never a settled issue and is always a risk for the Plaintiffs.

### C. The Value of an Immediate Recovery Outweighs the Possibility of Future Relief

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement provides for a non-reversionary common fund of $1,400,000. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible for *pro rata* payments of $50, each can make a claim for lost time totaling $100 (up to 4 hours at a rate of $25 per hour), and each can claim up to $5,000 in reimbursements for extraordinary losses. Doc. 45-2, PageID 468. This includes Class Members who were otherwise subject to an arbitration agreement, indicating the Settlement is comprehensive and treats all members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

These are substantial benefits conferred to Settlement Class Members. On a per-Class Member basis, this $1.4 million settlement provides a recovery of $6.84 for each of the 204,663 Class Members who were sent direct notice of this Settlement. Because the settlement amount here is similar to (and exceeds) other settlements reached and approved in similar data breach cases, this factor reflects that the Settlement is fair. *See, e.g., Winstead v. ComplyRight, Inc.,* No. 1:18-cv-04990 (N.D. Ill.) ($3,025,000 common fund for 665,689 persons, equaling $4.54 per class member); *Fernandez v. 90 Degree Benefits*, Case No. 2:22-cv-00799-SCD (ED WI) ($990,000 common fund for 185,461 persons, equaling $5.33 per class member); *Bingaman v. Avem Health*

*Partners, Inc.*, No. CIV-23-130-SLP (WD OK) ($1,450,000 common fund for 271,303 persons, equaling $5.34 per class member). In light of the difficulties and expenses Class Members would face pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. See *id*. Accordingly, this factor favors approval.

### D. The Judgment of the Parties and Their Counsel that Settlement is Fair and Reasonable

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who have litigated numerous data breach cases, spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. Coates Final Approval Decl., ¶ 3.

Moreover, the reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 204,663 to whom notice was mailed, only 5 Class Members requested exclusion and there were no objections. Angeion Decl., ¶¶ 16-17. As of February 19, 2024, the administrator received 7,400 claim submissions. *Id*. ¶ 15. This amounts to a claims rate of over 3.6%, a rate that is consistent with other finally approved data breach settlements. *See* Coates Final Approval Decl., ¶ 4.

### E. The Notice Program Preliminarily Approved by the Court Was the Best Notice Practicable Under the Circumstances, and Was Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). There is no statutory or due-process

13

requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." Here, the notice program satisfies the structures of Rule 23 and due process and should be approved by the Court. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Coates Final Approval Decl. ¶ 5, Based upon the statistics provided by Angeion, the notice program reached approximately 86% of Class Members. Angeion Decl., ¶¶ 7-10. A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010) (www.fjc.gov/sites/default/files/2012/NotCheck.pdf); *see also Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022). The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). Doc. 46, PageID # 550, *et seq*. The notices directed Class Members to the Settlement Website (https://www.credatasettlement.com/) and a toll-free number for additional information regarding how they could opt out of or object to the Settlement. *Id.*; Angeion Decl., ¶¶ 11-14.

### F. Plaintiffs' Fee Motion Should be Granted

For the reasons stated in Plaintiffs' separate Motion and Application for Attorneys' Fees, Expenses and Service Awards to Class Representatives, Plaintiffs' fee motion should be granted.

Doc. 47. Similarly, for the reasons stated in Plaintiffs' opposition to Class Member Bohler's request for attorneys' fees (Doc. 52), his request should be overruled and disregarded, as Bohler's attorneys provided no benefit to the Class and only sought to impede the Settlement.

## IV.     CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs Van Sickle, Bischoff, Boss, and Singletary respectfully request that the Court grant final approval of class action settlement, including awarding Service Awards in the amount of $5,000 to each Class Representative, $466,200.00 in reasonable attorneys' fees, and $11,540.93 in litigation expenses, and enter the proposed Order file herewith.

Respectfully submitted,

/s/ Jason R. Hull
Jason R. Hull [11202]
jhull@mohtrial.com
**MARSHALL OLSON & HULL, PC**
Newhouse Building Ten Exchange Place
Suite 350
Salt Lake City, Utah 84111
Telephone: 801.456.7655

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel:  866-247-0047
gklinger@milberg.com

Samuel J. Strauss
sam@turkestrauss.com
Raina C. Borrelli
raina@turkestrauss.com
Alex Phillips
alexp@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703

Telephone (608) 237-1775
Facsimile (608) 509-4423

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon*
2754 Erie Ave. Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2024, I served a copy of the foregoing via electronic filing in the ECF system.

/s/ *Jason R. Hull*